UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON L. PICKLES,

    Plaintiff,

v.

DEPUTY TYLER WILSON, DEPUTY ROBERT KENNON, DEPUTY RONALD HENSLEY II, DEPUTY JOSHUA BAKER, LYNN BROOM, YESCARE CORP., and LAKELAND REGIONAL MEDICAL CENTER, INC.,

    Defendants.

Case No.: 8:24-cv-1246-MSS-CPT

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Jason L. Pickles ("Mr. Pickles"), by and through his undersigned counsel, hereby sues defendants Deputy Tyler Wilson, Deputy Robert Kennon, Deputy Ronald Hensley II, Deputy Joshua Baker, Lynn Broom, YesCare Corp. ("YesCare" and together with Deputies Wilson, Kennon, Hensley, Baker, and Ms. Broom, the "Jail Defendants"), and Lakeland Regional Medical Center, Inc. ("LRMC" and together with the Jail Defendants, the "Defendants") and alleges:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States, specifically, 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district and division because all of the acts, conduct, and omissions giving rise to the claims set forth in this Complaint occurred in Polk County, Florida. *See* M.D. Fla. Local Rule 1.04(a).

## PARTIES

4. Mr. Pickles is an adult, a United States citizen, and, at all times material to this action, was a resident of Polk County, Florida. At all times material to this action, it was clearly established that Mr. Pickles, while in law enforcement custody, was entitled to adequate medical care.

5. Defendant Deputy Tyler Wilson was, at all times relevant to this action, employed as a Sheriff's deputy by the Polk County Sheriff's Office (the "Sheriff's Office") and is sued in his individual capacity. At all relevant times, Deputy Wilson had the ability and power to provide or order medical care for inmates incarcerated at the Polk County Jail (the "Jail") and, further, that he had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. All of Wilson's actions described in this Complaint were carried out under color of law.

6. Defendant Deputy Robert Kennon was, at all times relevant to this action, employed as a Sheriff's deputy by the Sheriff's Office and is sued in his individual capacity. At all relevant times, Deputy Kennon had the ability and power to provide or order medical care for inmates incarcerated at the Jail and, further, that

he had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. All of Defendant Kennon's actions described in this Complaint were carried out under color of law.

7.     Defendant Deputy Ronald Hensley II at all times relevant to this action, employed as a Sheriff's deputy by the Sheriff's Office and is sued in his individual capacity. At all relevant times, Deputy Hensley had the ability and power to provide or order medical care for inmates incarcerated at the Jail and, further, that he had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. All of Defendant Hensley's actions described in this Complaint were carried out under color of law.

8.     Defendant Deputy Joshua Baker at all times relevant to this action, employed as a Sheriff's deputy by the Sheriff's Office and is sued in his individual capacity. At all relevant times, Deputy Baker had the ability and power to provide or order medical care for inmates incarcerated at the Jail and, further, that he had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. All of Defendant Baker's actions described in this Complaint were carried out under color of law.

9.     Defendant YesCare is incorporated, and has its principal place of business, in Tennessee. YesCare does business in Polk County, Florida, specifically including but not limited to providing healthcare services to inmates incarcerated at the Jail. YesCare contracted with the Polk County Sheriff's Office to provide health care services to the Polk County jail detainees. At all relevant times, YesCare had the

ability and power to provide medical care for inmates incarcerated at the Jail and, further, had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. All of YesCare's actions described in this Complaint were carried out under color of law.

10. Defendant Lynn Broom was at all times relevant to this Complaint employed as a registered nurse of YesCare working at the Jail. At all relevant times, Broom had the ability and power to provide or order medical care for inmates incarcerated at the Jail and, further, that she had a constitutional requirement to provide or arrange for the provision of adequate medical care for incarcerated inmates. Broom is sued in her individual capacity. All of Broom's actions described in this Complaint were carried out under color of law.

11. Defendant LRMC is a Florida not-for-profit corporation with its principal place of business in Polk County, Florida. Upon information and belief, at all relevant times, LRHMC contracted with the Sheriff's Office to provide healthcare services to individuals arrested by the Sheriff's Office, such as Mr. Pickles. All of LRHMC's actions described in this Complaint were carried out under color of law.

## FACTUAL BACKGROUND

12. Around 7:30 A.M. on the morning of November 10, 2022, Mr. Pickles was driving a vehicle in the parking lot of an apartment complex located in Winter Haven, Florida when Winter Haven Police Department officers driving an unmarked vehicle tried to stop him.

13. Mr. Pickles was attempting to leave the parking lot when Detective Michael Orphee-Entienne of the Winter Haven Police Department shot six rounds at an unarmed Mr. Pickles from behind.

14. One of Detective Orphee-Entienne's .45 caliber bullets struck Mr. Pickles' left buttock, tore through his thigh, and lodged in his left knee. The bullet never discharged from Mr. Pickles' body.

15. Shortly after he was shot, Mr. Pickles was arrested and taken to LRMC, where he was examined and discharged approximately four and a half hours later into the Sheriff's Office's custody.

16. LRMC did not provide Mr. Pickles with antibiotics or pain killers, nor did LRMC remove the bullet from Mr. Pickles' knee or even suture his gunshot wound.[1]

17. LRMC's failures in this regard demonstrate its deliberate indifference to Mr. Pickles' serious medical needs.

18. Upon LRMC's premature discharge, Mr. Pickles was transported to the Polk County Sheriff's Office, where, beginning at approximately 1:23 P.M., Sheriff's Office detectives interrogated Mr. Pickles, with the bullet still in his knee.

19. Following the direction from LRHMC, Mr. Pickles informed officers that he had increased pain and was cold. Indeed, the detectives even noted that, during

---

[1] LRMC provided Mr. Pickles with instructions for aftercare that directed Mr. Pickles to call a healthcare provider right away if there is "increasing pain in the wound" or "redness, swelling, or pus coming from the wound."

5

the interview, Mr. Pickles became incoherent, fell asleep, and slumped over in his chair. Mr. Pickles' incoherence, coupled with his complaints of pain and the shooting that occurred hours earlier, made clear to the Sheriff's Office detectives that Mr. Pickles was in need of serious medical care.

20. Despite the foregoing, the Sheriff's Office detectives did not contact medical professionals, offer any aide to Mr. Pickles, or even stop the interrogation to allow him to recover. These actions were deliberate and were designed to deprive Mr. Pickles from receiving needed medical care.

21. Once the Sheriff's Office detectives concluded the interrogation, Mr. Pickles was transferred to the Jail, where he was placed into the medical dorm.

22. Upon arrival at the Jail, Mr. Pickles made numerous verbal complaints of severe pain due to his gunshot wound to Jail staff, including Defendants Hensley, and Broom. Mr. Pickles' worsening medical condition, coupled with his complaints of pain, made clear to Defendants Hensley and Broom that he was in need of serious medical care. Defendants Hensley and Broom did nothing in response. Defendants Hensley's and Broom's failure to provide medical care to Mr. Pickles, even after Mr. Pickles followed LRMC's instructions, was willful and intentional.

23. On November 11, 2022, Mr. Pickles had his initial appearance before the Honorable Judge Gravitt in *State v. Pickles*, 2022-CF-009409 (Fla. 10th Jud. Cir.). Mr. Pickles was transported to the courtroom via wheelchair because he was unable to walk due to having been shot.

24. Since the Defendants Hensley, Broom, and YesCare had ignored Mr. Pickles' repeated pleas for medical attention, Mr. Pickles pleaded to the Court that he be provided medical attention. Judge Gravitt assured Mr. Pickles that "[t]hey're going to get you medical attention at the jail." Despite the order from the Court, the Jail Defendants continued to intentionally and willfully deny Mr. Pickles with the needed medical care that LRMC had prescribed and that would be customary in the ordinary course.

25. After his initial appearance, Mr. Pickles was returned to the medical dorm.

26. Immediately upon his return, Mr. Pickles again began requesting medical attention for his gunshot wound, as he was in excruciating pain and there was a .45-caliber bullet in his knee. Mr. Pickles directed his pleas to the Defendants Broom and Wilson, among others. Defendants Broom and Wilson each, and collectively, callously and indifferently ignored Mr. Pickles' request for medical treatment.

27. The Jail Defendants continued to ignore Mr. Pickles' complaints and offered him ***nothing*** for his pain, or the infection that was brewing in his wound. These actions by the Jail Defendants were intentional and willful.

28. For the avoidance of doubt, Mr. Pickles was not given any antibiotics, his bullet wound was not dressed, and he was not given X-rays or other diagnostic imaging to determine what damage the bullet in his knee may have caused. The only relief he occasionally was offered was ***ibuprofen***.

29. On information and belief, it is YesCare's policy not to provide incarcerated individuals care for chronic pain. Because, in part, of this policy, Mr. Pickles was denied any relief for his serious pain that was the result of a gunshot wound, and his pleas for help were ignored.

30. After approximately one week in the medical dorm, Mr. Pickles was transferred to the quarantine dorm.

31. In the quarantine dorm, Mr. Pickles continued to beg the Jail Defendants – the people responsible for, and in complete control of, his health – for medical attention. These pleas were directed to Defendants Wilson, Hensley, Baker, Kennon, and Broom, among others. Mr. Pickles' medical condition, coupled with his complaints, made clear to even a non-medical individual that he was in need of serious medical care.

32. The Jail Defendants continued ignoring Mr. Pickles' pleas for medical attention, even when he declared medical emergencies and Defendant Broom examined him.

33. In particular, Defendants Wilson, Hensley, Baker, Kennon, and Broom each individually, and collectively, decided not to provide or order further medical care despite (a) a bullet being lodged in Mr. Pickles' knee, (b) LRMC instructing that a healthcare professional be consulted if there was increasing pain, and (c) a judicial admonishment that medical care would be provided.

34. Defendant Broom was acting in accordance with YesCare's policy and practice of deliberately not providing incarcerated individuals care for chronic pain.

8

35. Accordingly, on or about November 17, 2022, Mr. Pickles filed a grievance form regarding the Jail's refusal to provide him medical care for his gunshot wound.

36. Mr. Pickles' grievance and declarations of medical emergencies were met with retaliation by the Jail Defendants.

37. Specifically, instead of providing medical care to Mr. Pickles, the Jail placed Mr. Pickles in a self-harm observation status, meaning he was isolated in a cell with nothing but a smock, blanket, and cot. But Mr. Pickles had not made any threats of self-harm or harm to others. Upon information and belief, it was Defendant Broom and YesCare who determined Mr. Pickles should be placed in self-harm observation status.

38. While in self-harm observation, Mr. Pickles was seen six days a week by a mental health counselor. Each and every day, Mr. Pickles pleaded with the mental health counselor (and others, including the Jail Defendants) for treatment for the infection and pain caused by the gunshot wound. Each and every day, the mental health counselors ignored Mr. Pickles' requests.

39. While in self-harm observation, Mr. Pickles felt extremely ill. Brown-tinted, bloody puss continuously dripped from his gunshot wound, leaving puddles on the floor of his cell and soaking his smock. A layer of dried puss formed on his leg and right arm. The scent of Mr. Pickles' infected wound caused verbal complaints by other incarcerated individuals.

9

40. Mr. Pickles infection was so severe that he developed bilateral edema in which his legs became severely swollen. In fact, the infection spread was so widespread, it affected his right hand, which became extremely swollen and leaked puss.

41. Mr. Pickles pain and infection was so debilitating that he largely was immobilized and was forced to urinate on himself several times, as he could not make it to the toilet.

42. Mr. Pickles sat in this condition for three more weeks, each day begging for relief from his excruciating pain to all Jail staff he came into contact with, including the Jail Defendants.

43. During this period, Defendant Broom sprayed Mr. Pickles' wound with an unidentified "disinfectant" every day, but offered no other relief. For hours after these spraying incidents, Mr. Pickles' wound stung and leaked even more. Eventually, the pain was so unbearable that Mr. Pickles refused to permit Defendant Broom to spray the wound.

44. While in self-harm observation, Mr. Pickles was not given *any* antibiotics, his bullet wound was not dressed, and he was not given X-rays or other diagnostic imaging to determine what damage the bullet in his knee may have caused. The only relief he occasionally was offered was *ibuprofen*.

45. Because Mr. Pickles was in the special housing unit, he was unable to access the Jail kiosk where all grievances must be filed and therefore could not file additional grievances during this time.

46. On November 21, 2022, Mr. Pickles appeared before the Honorable J. David Langford[2] in *State v. Pickles*, 2021-CF-002604 (Fla. 10th Jud. Cir.) for a routine calendar call.

47. At the calendar call, because his prior grievance was met with retaliation, Mr. Pickles begged the Court for medical attention. The Court obliged and, extraordinarily, directed that Mr. Pickles receive any medical treatment necessary. *Id.*, Dkt. 51.

48. Despite this clear directive, Mr. Pickles did not receive necessary medical care for several more weeks. Only after Mr. Pickles was on the brink of death did Mr. Pickles receive medical care.

49. Specifically, in early December 2022, nearly a month after Mr. Pickles was shot, he was transferred from the Jail to Winter Haven Hospital.

50. Mr. Pickles was immediately admitted and placed on intravenous antibiotics, given hydromorphone (a narcotic to treat severe pain), and promptly scheduled for emergency surgery.

51. The Winter Haven Hospital personnel were horrified and shocked at the extent of Mr. Pickles' infection, which had spread to his heart and bloodstream.

---

[2] The case was assigned to the Honorable Donald Jacobson, but Judge Langford covered the hearing for Judge Jacobson. *See State v. Pickles*, 2021-CF-002604 (Fla. 10th Jud. Cir.), Dkt. 52.

11

52. As a result of Defendants' brazen and intentional disregard for Mr. Pickles' serious and obvious medical needs, Mr. Pickles developed a life-threatening infection, necessitating two lengthy and painful surgeries to treat the infected wound.

53. The first surgery lasted approximately three hours and was an irrigation and debridement procedure during which the dead and infected tissue was scraped out of Mr. Pickles' body. The surgeons also had to make several large incisions in Mr. Pickles' right hand to drain the puss and relieve the pressure from the gunshot wound in his buttocks and hip.

54. Mr. Pickles then had to undergo a second surgical procedure to extract the .45 caliber bullet from his knee.

55. During the two surgeries, Mr. Pickles suffered six incisions, one of which was 14 inches long.

56. The surgeries were physically and mentally traumatizing, exacerbated by the fact that the removal of the bullet could—and should—have been done by when Mr. Pickles was shot a month earlier and in the care of LRMC.

57. When Mr. Pickles was discharged from Winter Haven Hospital on or about December 11, 2022, he was returned to the Jail infirmary where he was immediately stripped nude and shackled to a bed.

58. Six-point restraints were placed on Mr. Pickles' wrists, ankles, across his chest, and across his legs, restricting blood flow and all movement and thus causing more pain and discomfort as he healed from the invasive surgeries.

59. Mr. Pickles was positioned such that his arms were bent at the elbows and his hands were at the sides of his head.

60. Mr. Pickles was placed in this 6-point restraint position, despite that the Polk County Sheriff's Office Booking Sheet noted that Mr. Pickles should have been placed in a less-prohibitive 3-point restraint position.

61. Mr. Pickles was not given a reason for being restrained.

62. Mr. Pickles laid naked and pinned to the bed for several days, from December 11, 2022 to approximately December 14, 2022.

63. The pain of being pinned to the bed for days on end in an unnatural position and after two major surgeries was excruciating. Mr. Pickles screamed in pain for days, but was ignored. Mr. Pickles directed his screams and pleas for help to Defendants Wilson, Hensley, Baker, Kennon, and Broom, as well as others. Defendants Wilson, Hensley, Baker, Kennon, and Broom, as well as others, purposefully denied Mr. Pickles follow-up medical care.

64. Mr. Pickles' recovery from his two extensive surgeries took time. On March 29, 2024, Mr. Pickles was able to file another grievance seeking redress for Defendants' willful mistreatment of him.

65. On July 17, 2024, Mr. Pickles submitted another grievance seeking redress for Defendants' willful mistreatment of him. He followed-up with a letter to the grievance coordinator on August 28, 2024.

66. None of Mr. Pickles grievances resulted in any remedy being offered, much less provided. Mr. Pickles has exhausted his administrative remedies. Further efforts to pursue administrative remedies would be futile.

67. As a result of all Defendants' actions and omissions, Mr. Pickles suffered extreme pain, humiliation, and intense fear for weeks, as described above.

68. As a result of Defendants' individual and collective actions and omissions, Mr. Pickles continues to suffer mental health issues, including antisocial behaviors, fear, and emotional distress. He cannot function in social settings and has self-isolated and has lost confidence.

69. As a result of Defendants' actions and omissions, Mr. Pickles has lost strength and mobility in his leg.

70. At all relevant times hereto, Defendants were aware that Mr. Pickles had serious medical needs—an untreated, infected .45 caliber gunshot wound oozing puss—and that Mr. Pickles was in agonizing pain.

71. Despite Defendants' knowledge of Mr. Pickles' life-threatening injury and repeated complaints of pain and pleas for help, Defendants deliberately refused to provide Mr. Pickles medical care.

72. At all times relevant to this complaint, Defendant Broom acted within the scope and course of her employment with Defendant YesCare and on behalf of YesCare.

## COUNT I
## 42 U.S.C. § 1983 Fourteenth Amendment Violations
## (Against LRMC)

73. Mr. Pickles incorporates and realleges paragraphs 1-72 as if fully set forth herein.

74. On November 10, 2022, Mr. Pickles was arrested by, and in the care of, the Sheriff's Office, with whom, on information and belief, LRMC contracted with to provide medical care to arrested individuals such as Mr. Pickles.

75. On November 10, 2022, Mr. Pickles had serious medical needs as a result of being shot by a police officer.

76. LRMC had knowledge of Mr. Pickles' serious medical needs.

77. LRMC intentionally, or at least with deliberate indifference, refused to provide Mr. Pickles needed medical care and instead discharged him.

78. Accordingly, LRMC expressed a deliberate indifference to, and callous disregard of, Mr. Pickles' serious medical needs.

79. LRMC intentionally, or at least with deliberate indifference, deprived Mr. Pickles of necessary medical care, violating his constitutional right to due process of law. U.S. Const. Amend. XIV.

80. As a direct and proximate result of the aforementioned actions and omissions of LRMC, Mr. Pickles suffered serious mental and physical injuries and damages, including physical and mental pain and suffering.

81. As a direct and proximate result of the aforementioned actions and omissions of LRMC, Mr. Pickles will continue to suffer serious mental and physical pain and suffering

## COUNT II
### 42 U.S.C. § 1983 Fourteenth Amendment Violations
### (Against All Jail Defendants)

82. Mr. Pickles incorporates and realleges paragraphs 1-72 as if fully set forth herein.

83. At all times relevant to this Complaint, Mr. Pickles was incarcerated at the Jail and had serious medical needs.

84. The Jail Defendants had knowledge of Mr. Pickles' serious medical needs.

85. The Jail Defendants intentionally refused to provide Mr. Pickles needed medical care.

86. Accordingly, the Jail Defendants expressed a deliberate indifference to, and callous disregard of, Mr. Pickles' serious medical needs.

87. Further, on information and belief, it was YesCare's policy not to provide treatment for chronic pain to incarcerated individuals, including Mr. Pickles.

88. The Jail Defendants intentionally, or at least with deliberate indifference, deprived Mr. Pickles of necessary medical care, violating his constitutional right to due process. U.S. Const. Amend. XIV.

89. As a direct and proximate result of the aforementioned actions and omissions of the Jail Defendants, Mr. Pickles suffered serious mental and physical injuries and damages, including physical and mental pain and suffering.

90. As a direct and proximate result of the aforementioned actions and omissions of the Jail Defendants, Mr. Pickles will continue to suffer serious mental and physical pain and suffering.

### COUNT III
### 42 U.S.C. § 12203 Retaliation
### (Against All Jail Defendants)

91. Mr. Pickles incorporates and realleges paragraphs 1-72 as if fully set forth herein.

92. At all times relevant to this Complaint, Mr. Pickles was incarcerated at the Jail, had serious medical needs, and, as a result of being shot, had a disability, as that term is defined in 42 U.S.C. § 12102(1)(A).

93. The Jail Defendants had knowledge of Mr. Pickles' serious medical needs and disability.

94. The Jail Defendants intentionally refused to provide Mr. Pickles needed medical care and accommodations for his disability.

95. When Mr. Pickles filed a grievance regarding the Jail Defendants' deliberate indifference to his serious medical needs and disability, the Jail Defendants retaliated against him by placing him in self-harm observation status.

96. The Jail Defendants' retaliation was in violation of 42 U.S.C. § 12203(a), which provides "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

97. The Jail Defendants are employed by the Sheriff's Office, a "public entity" under the Americans with Disabilities Act. See 42 U.S.C. § 12131(1)(B).

98. The disregard for and denial of Mr. Pickles' medical needs and his placement on self-harm observation status occurred in retaliation for Plaintiff's Americans with Disabilities Act-protected activity; namely, his requests filing of grievances regarding the Defendants' deliberate refusal to provide him with medical care.

99. As a result of the Jail Defendants' discrimination and retaliation against Mr. Pickles, Mr. Pickles was deliberately deprived of equal access to medical care to which he is entitled.

100. As a direct and proximate result of the aforementioned actions and omissions of the Jail Defendants, Mr. Pickles suffered serious mental and physical injuries and damages, including physical and mental pain and suffering.

101. As a direct and proximate result of the aforementioned actions and omissions of the Jail Defendants, Mr. Pickles will continue to suffer serious mental and physical pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Pickles respectfully requests a judgment:

A. Awarding compensatory, consequential, and actual, damages in favor of Mr. Pickles for all physical and emotional pain and suffering he has suffered and will suffer as a result of Defendants' deliberate indifference to his serious medical needs and violation of his Fourteenth Amendment rights, in an amount to be proven at trial;

B. Awarding Mr. Pickles punitive damages in an amount to be proven at trial;

C. Awarding Mr. Pickles pre- and post-judgment interest;

D. Awarding Mr. Pickles reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and

E. Granting such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

    Mr. Pickles requests a trial by jury.

Dated: January 6, 2025

Respectfully submitted,

**FOLEY & LARDNER LLP**

<u>/s/ Jason P. Mehta</u>
Jason P. Mehta (FBN 106110)
Primary Email: jmehta@foley.com
Secondary Email: dmills@foley.com
Heather Lee (FBN 1011026)
Primary Email: hlee@foley.com
Secondary Email: dmills@foley.com
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210

*Attorneys for Plaintiff Jason Pickles*